UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETS

| | | |
|---|---|---|
| ZANUB RAZA, | ) | Docket No. 1:17-bk-14818 |
| DEBTOR | ) | |
| ROMAN BEYLIN, | ) | |
| PLAINTIFF, | ) | Docket No. 1:18-ap-01040 |
| v. | ) | Chapter 7 |
| ZANUB RAZA, | ) | |
| Defendant. | ) | |

**FMR LLC AND FMR CO, INC.'S MOTION TO QUASH TRIAL SUBPOENAS**

Pursuant to Fed. R. Civ. P. 45(d)(3), third parties FMR LLC and FMR Co., Inc. (together, "Fidelity") hereby request that the Court quash all trial subpoenas issued by Roman Beylin to Fidelity in this matter. As explained in more detail below, all of the subpoenas are inappropriate and would cause undue burden in violation of the relevant rules of procedure. Specifically, they seek: (1) expert testimony from individuals who are not appropriately designated experts in this case; (2) testimony from an individual outside of the subpoena power of this Court; and (3) nearly twenty-four topics of testimony that are wildly overbroad, patently irrelevant, and pose an undue burden on Fidelity in violation of Fed. R. Civ. P. 45(d). Moreover, Beylin and his counsel have not fulfilled their obligation under Fed. R. Civ. P. 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," particularly a non-party.

1

## Background

**A.    Prior Litigation and Production of Documents**

Both of the parties to the above-captioned matter are former employees of Fidelity. Ms. Raza's employment at Fidelity was terminated in August 2014, following an internal investigation by Fidelity (the "Investigation") concerning an allegation that she had sent inappropriate emails.

In August 2017, Ms. Raza sued Fidelity in Suffolk Superior Court. Fidelity filed a motion to dismiss that claim, but prior to the Court's ruling on Fidelity's motion to dismiss, Raza voluntarily dismissed the case. *See Raza v. FMR Co., et. al., Suffolk Superior Court* Dkt. No. 1784-cv-02461.

Subsequently, Beylin sued Raza in Suffolk Superior Court. Fidelity was not a party to that case. *See Beylin v. Raza, Suffolk Superior Court* Dkt. No. 1784-cv-02373. In June 2018, Mr. Beylin served upon Fidelity a series of subpoenas duces tecum related to that litigation. In response to the subpoenas, Fidelity produced 2,643 documents (9,616 pages) and a Keeper of Records affidavit. *See* Ex. 1 (KOR affidavit).

**B.    Document Subpoena Issued to Fidelity in this Matter**

On February 26, 2019, Beylin served on Fidelity a subpoena seeking documents: (1) regarding the analysis of devices during the Investigation; (2) identifying the software or tools used during the Investigation; (3) regarding the methodology used in conducting the Investigation; and (4) concerning the qualifications of the Fidelity employees who conducted the Investigation.

That subpoena was withdrawn following objections by Raza's counsel. In its place, a subpoena issued seeking testimony from Fidelity witnesses related to fourteen topics, including the Investigation, and seeking the four categories of documents listed above.

Fidelity conferred with Beylin's counsel, asserting objections to the subpoena centered on the overbreadth of the testimony sought and the burden on Fidelity. Counsel for Fidelity also argued that the subpoenas sought information that was properly the subject of expert, not lay, testimony. Beylin's counsel conferred with Fidelity's counsel and agreed to narrow his requests to the following:

1) A copy of the email with the offensive photos with the "metadata header info."
2) The credentials of the people who conducted the forensic investigation at Fidelity.
3) Permitting his expert to talk to the individuals at Fidelity who conducted the investigation.
4) Testimony, if the case goes to trial, by the person who reached the conclusion of the investigation, about what was done during the investigation and how they reached that conclusion.

Fidelity served formal objections to the subpoena on March 15, 2019, repeating its arguments concerning overbreadth, burden, and improper expert testimony. *See* Ex. 2. In further conferences, Fidelity reiterated to Beylin's counsel that Fidelity had searched for any documents concerning the Investigation apart from the 9,616 pages of material previously produced, and had not identified any.

At the same time, Raza's counsel asserted objections to the subpoena based, *inter alia*, on the fact that discovery had been over in the case for some time, and the fact that the subpoena appeared to improperly seek expert testimony and information from an entity not designated as an expert in the case. The parties requested an informal conference with Judge Bailey pursuant to Paragraph 10 of this Court's Scheduling and Pretrial Order.

The conference took place on May 10, 2019. During that conference, Judge Bailey expressed an initial view that Fidelity witnesses should not be expected to provide expert testimony, that Fidelity should provide information about the credentials of the individuals who conducted the Investigation, but nothing more, and that no further fact discovery was going to be

3

permitted. Fidelity produced information about credentials on May 15, 2019. No motion to compel was filed.

**C.  Trial Subpoenas Issued to Fidelity in This Matter**

On January 9, 2020, counsel for Beylin asked undersigned counsel whether she would accept service of trial subpoenas to Fidelity employees. Counsel for Fidelity attempted to confer with Beylin's counsel about the topics upon which he intended to seek testimony from the Fidelity employees, particularly the Keeper of Records. Beylin's counsel responded that the information would be contained in the subpoenas themselves. During that conference, Fidelity counsel apprised Beylin's counsel that Julie Burns, one of the individuals from whom testimony is sought, lives and works in New Mexico and cannot be compelled to trial in Massachusetts Federal District Court.

Fidelity counsel agreed to accept service of trial subpoenas, while explicitly retaining Fidelity's right to object to the production of individuals and/or documents for any reason other than improper service. Fidelity received the subpoenas on January 30, 2020, which arrived together with documents entitled "Disclosure of Expert Witnesses" of FMR Co. and FMR LLC.

The following subpoenas were served:

1. Subpoenas to "Designee Most Knowledgeable" of FMR LLC and FMR Co., Inc., seeking testimony on *twenty-three* matters set forth on an attached Schedule. The topics are wide-ranging and include, among others: "Raza's employment," "all matters raised in the claims, counterclaims, and defenses in this action," and "Your[1] opinions" on all of the matters contained in the Disclosure of Expert Witnesses.

2. Subpoenas to the Keeper of Records of FMR Co., Inc. and FMR LLC, neither of which, despite Beylin's counsel's representations, reference the records about which the custodian would be expected to testify.

3. A subpoena to Julie Burns, the employee of Fidelity who Beylin's counsel is aware lives and works in New Mexico.

4. A subpoena to Scott Olsen, a Fidelity employee who lives and works in New Hampshire.

---

[1] You" and "Your" are not defined in the Schedule.

5. A subpoena to Wayne Proznati, a Fidelity employee who lives and works in New Hampshire.

*See* Ex. 3 ("Designee" subpoenas), Ex. 4 (KOR subpoenas), Ex. 5 (Burns subpoena), Ex. 6 (Olsen subpoena), Ex. 7 (Proznati subpoena), Ex. 8 (Disclosure of Expert Witnesses).

**D.     Conferences Prior to Filing this Motion**

Following the receipt of the above-listed subpoenas, Fidelity counsel attempted to confer with Beylin's counsel in order to clarify and narrow the scope of the testimony sought, so that Fidelity could put to this Court the pending issues, and could notify and prepare its employees in a timely manner if their testimony is in fact compelled.

This effort proved both fruitless and frustrating. For example, Fidelity counsel has repeatedly requested that Beylin withdraw the subpoena issued to Ms. Burns, but Beylin has not done so. In addition, in response to Fidelity's request that Beylin specify which of the overbroad 23 topics in the "Designee Most Knowledgeable" subpoena he in fact is seeking, Beylin's counsel responded that although he primarily seeks testimony concerning Topic 9 – "the conduct and conclusions of the investigation" – in his opinion, that Topic *also* includes, as "subsets," categories 3, 4, 8, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, and 23. Notably, Topic 23 requests "Your opinions on all matters described in" the Expert Disclosures served with the subpoenas.

In another example, Fidelity counsel sought to understand why a live keeper of records witness is required to establish that certain documents are business records, given that a Fidelity Keeper of Records affidavit was produced with those very same documents. Beylin has not responded, but apparently has instead filed a motion with this court seeking a determination about whether those same documents are in fact business records. In short, Fidelity has attempted over a great deal of time to narrow the issues in dispute in order to avoid imposing this dispute on the court, but to no avail.

## ARGUMENT

This case concerns whether Raza's conduct toward Beylin constitutes a non-dischargeable debt pursuant to 11 U.S.C. s. 523(a)(6).  Fidelity is not a party to this case.  No Fidelity employees were deposed in this matter.  No Fidelity employee is serving as an expert in this matter.  Fidelity takes no position on the merits of the case.

Nonetheless, Beylin has proceeded to seek extensive trial testimony from Fidelity in this case purportedly because he deems it relevant that Raza was terminated from Fidelity following Fidelity's internal investigation.  In addition, Beylin has issued so-called "Disclosures of Expert Witnesses of FMR Co. and FMR LLC," long after the close of both fact and expert discovery.

**I.    All Trial Subpoenas Issued by Beylin to Fidelity Should Be Quashed Because They Impose an Unreasonable Burden on Fidelity and Its Employees.**

Fidelity employees do not have relevant information to provide in this case.  It is undisputed that Raza was an at-will employee whose employment could be terminated by Fidelity for any lawful reason or no reason at all.  Fidelity was not required to – and did not – apply any particular legal standard to its findings concerning her purported conduct.

Moreover, a detailed description of Fidelity's Investigation process and methodology is contained in the Executive Summary of the Investigation (Beylin's Proposed Exhibit 40), which Fidelity has already attested is a business record.  Should the Court determine that the contents of that Summary are relevant, there is still no additional information that a Fidelity witness can provide, and Fidelity should not be required to produce an employee to provide live testimony at trial for the purpose of reiterating what is contained in the Summary.

Fed. R. Civ. P. 45(d)(3), made applicable in Bankruptcy proceedings by Rule 9016 of the Federal Rules of Bankruptcy Procedure, details the circumstances in which a Court must quash a subpoena, and those instances in which quashing is not mandatory, but is permissible.  Several provisions of that Rule apply here.

6

First, quashing Julie Burns's subpoena is required pursuant to Rule 45(d)(3)(A)(ii) because – as Beylin is aware – Ms. Burns lives and works beyond the geographical limits of this Court's subpoena power.

Second, Rule 45(d)(3)(A)(iv) applies because requiring Mr. Olsen, Mr. Proznati, or another Fidelity "designee" to testify would place an undue burden on both Fidelity and the employee at issue. Fidelity's non-party status is entitled to "special weight" in evaluating whether a subpoena imposes an undue burden. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citations omitted); *see also* Advisory Committee Notes to Rule 45, 1991 Amendments (revisions intended to "clarify and enlarge the protections afforded" to non-parties). "In examining motions to quash or for a protective order, "courts weigh the need of the party seeking discovery against any undue hardships created by permitting it." *Green v. Cosby*, 152 F. Supp. 3d 31, 36 (D. Mass. 2015), *modified on reconsideration,* 160 F. Supp. 3d 431 (D. Mass. 2016) (citations omitted). The Court considers "issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed when analyzing whether a subpoena places an undue burden on a nonparty." *Id.*

Here, all factors support quashing the subpoenas. Fidelity employees have little to no relevant information to share, and the requesting party has the information that he purports to need in written form (together with a keeper of records affidavit). In order to provide what would be essentially redundant and irrelevant testimony, Fidelity employees would be required to alter their work schedules both to prepare for their testimony and to provide it. As a non-party without additional information to share, Fidelity should not be required to assume this burden.

In addition to this overarching and determinative basis for quashing the subpoenas, several of the subpoenas are flawed for additional reasons, as set forth below.

7

**A.    The Subpoenas To The "Designee Most Knowledgeable" Are Improper And Must Be Quashed Because The Topics Designated are Irrelevant, Overbroad and Unduly Burdensome.**

Most of the nearly two dozen topics on Schedule A of the "Designee Most Knowledgeable" subpoenas are wildly overbroad, irrelevant, and unduly burdensome. Those topics are:

1. Your knowledge of all matters raised in the claims, counterclaims, and defenses in this action (a copy of the relevant pleadings will be provided upon request).
2. Raza's employment with you.
3. Raza's use of your network, E-mail server, and other telecommunications.
4. Discussions between Raza and any of your employees regarding the sending of the explicit E-mail prompting the Investigation, the Investigation, and/or her termination.
5. The personnel record of Zanub Raza as an employee.
6. Any matters relating to instant messaging within Fidelity as the same relates to the dispute and relationship between Zanub Raza and Roman Beylin.
7. Any communications concerning Beylin's relationship with Raza.
8. All matters regarding Raza's termination.
9. The conduct and conclusions of the Investigation.
10. The events that took place on or about August 1, 2014, concerning Zanub Raza and Roman Beylin.
11. Any communications to or from any Fidelity employee concerning the events that took place on August 1, 2014 between Raza and Beylin.
12. Any communications between any Fidelity employee and any third party concerning Beylin.
13. All communications to of from a Fidelity Employee and Zanub Raza concerning the matter of the email of Roman Beylin which is the subject of this litigation, including, but not limited to, an email sent on August 1, 2014.
14. The analysis of any devices, including without limitation laptops and iPads, during the Investigation.
15. All software or tools used in the Investigation.
16. The methodology used in conducting the Investigation.
17. The factual basis and any facts that relate to or were relied upon for the Executive Summary previously produced as FID08614-17.
18. The factual basis for the position statement submitted to the Massachusetts Commission Against Discrimination previously produced as FID08872-933.
19. The names, residential addresses, and qualifications of all individuals who worked on the Investigation.
20. The storage and custody of all documents produced previously produced by FMR Co., Inc., and/or FMR LLC in response to a subpoena from Beylin that was responded to on or about June 18, 2018, FID00001-FID09616.
21. The authentication and qualification of those records previously produced by FMR Co., Inc., and/or FMR LLC in response to a subpoena from Beylin that was responded to on or about June 18, 2018, FID00001-FID09616.

8

22. Any matters that relate to those records previously produced by FMR Co., Inc., and/or FMR LLC in response to a subpoena from Beylin that was responded to on or about June 18, 2018, FID00001- FID09616.
23. Your opinions on all matters described in the disclosure attached hereto.

*See* Ex. 3.

This list – which, as described above, Beylin has refused to meaningfully narrow – represents an abject failure of counsel's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1), and is sanctionable for that reason. Fidelity has been required to expend time and attorneys' fees attempting on multiple occasions to convince the issuing party to reasonably limit the scope of this list, only to be told – *months* into that effort – that one topic is truly sought (Topic 9) – but that fourteen additional topics are somehow subsumed within it. Now, twelve days before trial begins, Fidelity is forced to seek protection from this Court.

Notably, Beylin's counsel sought a substantially similar list of overbroad topics through depositions and document production from Fidelity earlier in this case. This Court implicitly acknowledged that these topics are not relevant to the dispute at hand when it limited Fidelity's obligation to produce documents to the credentials of the individuals who conducted the Investigation. So, too, here. Now that Fidelity has provided a range of documents concerning the Investigation (and conceded they are business records), and has provided the credentials of the individuals who were involved in the Investigation, nothing further should be required. Accordingly, the trial subpoenas should be quashed.

### B. The "Designee Most Knowledgeable" Subpoenas and the Subpoenas to Mr. Olsen and Mr. Proznati Must Be Quashed Because They Improperly Seek to Present Fidelity Employees as Experts.

Even if any of the topics on Schedule A of the "Designee Most Knowledgeable" were deemed relevant in this matter and not unduly burdensome, those subpoenas and the individual subpoenas to Scott Olsen and Wayne Proznati must still be quashed for an independent reason.

9

The primary topics sought through those subpoenas – Topic 9 (the Investigation) and Topic 23 ("Your opinions on all matters described" in the Disclosure of Expert Witnesses") – improperly attempt to transform Fidelity employees into either experts who were never disclosed during discovery in this matter, or into witnesses providing improper lay opinions.

Federal Rule of Evidence 701 governs the admission into evidence of opinion testimony by lay witnesses. It provides that:

> [i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "The lay opinion witness remains a fact witness as opposed to an expert witness." *Fecho v. Eli Lilly & Co.*, 914 F. Supp. 2d 130, 141 (D. Mass. 2012). However, subsection (c) provides that a lay witness's testimony may "not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, 902 F. Supp. 2d 166, 171 (D. Mass. 2012) (citations omitted). Accordingly, lay testimony may not pertain to "a process 'which can be mastered only by specialists in the field.'" *Id.*

The requested Fidelity witnesses are admittedly being called to provide "expert" testimony, as made crystal clear in Beylin's "Disclosures of Expert Witnesses," *see* Ex. 8. But this is improper. Any expertise they may have concerning technological processes such as tracing IP addresses is "outside the bounds allowed for a lay witness," because it is not a matter of common knowledge. *See Cmty. Broad. Co. v. Time Warner Cable, LLC*, 598 F. Supp. 2d 154, 158 (D. Me. 2009) (excluding lay testimony concerning the "auto search feature in HD digital televisions"). Accordingly, even if they seek information found to be tangentially relevant to this case, the subpoenas should be quashed.

### C.    Certain "Designee Most Knowledgeable" Topics Are Impermissible Because They Seek Testimony from a Witness Outside the Court's Geographical Reach.

Finally, certain topics listed on Schedule A are primarily within the purview of Julie Burns, an individual outside the subpoena power of this court due to the fact that she lives and works in New Mexico.  Accordingly, the subpoenas should be quashed for that reason as well.

It is not permissible to use a Rule 45 "Designee Most Knowledgeable" subpoena to circumvent the rules concerning the limits on subpoenaing witnesses.  As *Hill v. National Railroad Passenger Corp.*, 1989 WL 87621 at *1 (E.D. La. July 28, 1989), explained:

> "Rule 30(b)(6) specifically applies to the deposition of a corporation. Rule 45 of the Federal Rules of Civil Procedure provides the proper procedure by which **a person** may be compelled to testify at trial. There is no provision allowing the use of the 30(b)(6)-type designation of areas of inquiry or allowing service on a corporation through an agent for service of process in order to compel a particular person, who may be a corporate employee outside the subpoena power of the court, to testify at trial."

(emphasis added).  Similarly, the Ninth Circuit has rejected the contention that "because [Rule] 30(b)(6) permits a party to depose a corporation . . . by simply describing 'with reasonable particularity the matters on which examination is requested' and . . . letting the agency designate the individual[,] . . . the same policy should apply to Rule 45 requirements for subpoenaing witnesses."  *See Donoghue v. County of Orange*, 848 F.2d 926, 931-32 (9th Cir. 1987).  That Court had "discovered no authority, and [plaintiff] cite[d] none, for the proposition that Rule 30 standards should [somehow] govern Rule 45 subpoenas of witnesses." *Id.,* 848 F.2d at 931-32; *see also Cipollone v. Liggett Group*, No. 83-2864 (SA) (D. N.J. Jan. 27, 1988) ("[n]othing in Rule 30(b)(6) permits [Plaintiffs] to compel the appearance at trial of a witness outside of the Court's subpoena power granted by [Rule] 45(e)(1). . . . The rule neither states nor implies that such designation also amounts to a waiver of any objection to that witness' appearance at trial").

## CONCLUSION

For all of the reasons stated above, Fidelity respectfully requests that the Court quash all trial subpoenas issued by Beylin to Fidelity in this matter.  Fidelity requests oral argument to the extent that the Court believes that a hearing would assist in its determination of the issues presented herein.

Respectfully submitted,

*/s/ Victoria L. Steinberg*
Victoria L. Steinberg, BBO #666482
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA  02110
Telephone:    (617) 624-4714
Facsimile:     (617) 624-4814
vsteinberg@toddweld.com

*Counsel for FMR Co., Inc. and FMR LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing through this Court's CM/ECF filing system this 10th day of March 2020

*/s/ Victoria L. Steinberg*
Victoria L. Steinberg